JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Guillermo Beltran, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Inter-Con Security Systems, Inc. et al., <br><br> Defendants. | Case No. 2:21-cv-04927-VAP-(AFMx) <br><br> **Order DENYING Plaintiff's Motion to Remand (Dkt. 13) and GRANTING Defendant's Motion to Dismiss (Dkt. 24)** |

Plaintiffs Guillermo Beltran, et al. ("Beltran") filed a Motion to Remand ("Motion to Remand") on June 29, 2021. (*See* Doc. No. 13-1.) Defendants Inter-Con Security Systems, Inc. et al. ("Inter-Con") filed opposition on August 23, 2021 (*see* Doc. No. 26), and Beltran replied on August 30, 2021 (*see* Doc. No. 30.)

Inter-Con filed a Motion to Dismiss ("Motion to Dismiss") on August 9, 2021.  (*See* Doc. No. 24-1.) Beltran filed opposition on August 23, 2021 (*see* Doc. No. 27), and Inter-Con replied on August 30, 2021 (*see* Doc. No. 31.)

After considering all the papers filed in support of, and in opposition to, both motions, the Court deems this matter appropriate for resolution

without a hearing pursuant to Local Rule 7–15.  The Court **DENIES** the Motion to Remand and **GRANTS** the Motion to Dismiss.

## I. BACKGROUND

Beltran filed this putative class action in Los Angeles Superior Court against Inter-Con.  (*See* Doc. No. 1-2.)   Beltran and other putative class members worked as Armed Nuclear Security Officers for Inter-Con at San Onofre Nuclear Generating Station ("SONGS") located in Camp Pendleton, California.  (*See* Doc. No. 22.)  The First Amended Complaint alleges that Inter-Con failed to pay overtime wages and failed to provide rest periods to Beltran and other putative class members.  (*See id.*)   Accordingly, Beltran asserts labor law claims and unfair business practices claims against Inter-Con. (*See id.*)

On June 16, 2021, Inter-Con timely removed the Complaint to this Court based on federal question jurisdiction by asserting the federal enclave doctrine.  (*See* Doc. No. 1-1.)

## II. LEGAL STANDARD

**A. Motion to Remand**

A civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action.  28 U.S.C. § 1441(a).  "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999), superseded by statute on other grounds as stated in

*Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).  There is a strong presumption against removal jurisdiction, and federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted).  A "defendant always has the burden of establishing that removal is proper."  *Id.*  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court."  *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

### III. DISCUSSION

**A. Motion to Remand**

1. Federal Question Jurisdiction

Beltran argues the Court lacks federal question subject matter jurisdiction and thus remand is warranted. Beltran contends he alleges only state law claims and therefore a federal defense, like the federal enclave doctrine, fails to create federal question jurisdiction. (*See* Doc No. 13-1.)

Beltran's arguments fail. "Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006); *see also* 28 U.S.C. § 1331. Land is a federal enclave when the United States acquires it by purchase or condemnation for any of the purposes mentioned in Article I, section 8, clause 17 of the U.S. Constitution, within the borders of a State. *Paul v. United States*, 371 U.S. 245, 264 (1963).

As a threshold matter, SONGS, located within Camp Pendleton, is a federal enclave. As in other similar cases, the Court takes judicial notice that the United States acquired Camp Pendleton "no later than December 31, 1942." *Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1144–45 (S.D. Cal. 2007)[1]; *see also Abikar v. Bristol Bay Native Corp.*, 300 F. Supp. 3d

---

[1] *Stiefel* outlines the history of SONGS as a federal enclave:

"In 1939, California consented to allow the United States to acquire by purchase or condemnation any track of land within the state for the purpose of erecting forts or other needful buildings. See Cal. Stats.1939, ch. 710, § 1, p. 2231 (Decl. Thomas M. McInerney Supp. Def.'s Mot. Req. Judicial Notice, Ex. D). In 1942, the United States acquired Camp Pendleton through condemnation. See Law Enforcement at San Onofre Nuclear Generation Plant, 1 Op. Off. Legal Counsel 204, 204-05 (1977); see also Letter from James Forrestal, Under Secretary of the Navy, to Earl Warren, California Governor (Sept. 8, 1943) (on file in Official Recorder's Office of San Diego County, California) (Decl. Thomas M. McInerney Supp. Def.'s Mot. Req. Judicial Notice, Ex. E) ("The United States of America became vested with valid title to certain lands in San Diego County, California on December 31, 1942 . . . . [F]or the establishment of Camp Joseph H. Pendleton . . . .").

In 1963, Congress authorized the Secretary of the Navy to grant an easement allowing Southern California Edison Company and San Diego Gas and Electric Company to construct, operate, and maintain a nuclear electric generating station in Camp Pendleton Naval Reservation. See

1092, 1002 (S.D. Cal. 2018); *Cooper v. S. Cal. Edison Co.*, 170 F. App'x 496, 497 (9th Cir. 2006).

Further, although the parties do not raise it, the Court notes that under 40 U.S.C. section 3112, the Undersecretary of the Navy James Forrestal's letter establishes the date that the United States acquired federal jurisdiction. *See* 40 U.S.C. § 3112(b). Under section 3112(b), an authorized officer of the United States must accept jurisdiction "by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated." 40 U.S.C. § 3112(b). As required by statute, Undersecretary of the Navy James Forrestal, an authorized officer of the United States, formally accepted jurisdiction of Camp Pendleton as of December 31, 1942, in his letter to then-California Governor Earl Warren. (*See* Ex. B, Caitlin R. Johnson Declaration ("Johnson Decl."), Doc. No. 25-1.) Accordingly, although Beltran asserts only state law claims, the claims arise on the federal enclave of Camp Pendleton, and the Court therefore has federal question jurisdiction over Beltran's claims. *See Durham*, 445 F.3d at 1250.

---

> Act of July 30, 1963, Pub.L. No. 88-82, 77 Stat. 115. The U.S. Department of Justice has confirmed that SONGS is the nuclear generating plant authorized by Congress . . .
>
> Furthermore, it is generally known in the community that Camp Pendleton is a United States Marine Corp Base under the jurisdiction of the federal government. Accordingly, the Court takes judicial notice of the fact that SONGS is located within the federal enclave of Camp Pendleton, which was acquired by the United States no later than December 31, 1942."

*Stiefel*, 497 F.Supp.2d 1138, 1145-46.

United States District Court
Central District of California

### 2. Subclass of Employees

Beltran next argues that, even assuming the federal enclave doctrine applies, federal jurisdiction extends to only the subclass of employees who worked at the federal enclave and not those who worked elsewhere. (*See* Doc No. 13-1.)

Beltran's argument again is unavailing. The Complaint's other proposed subclass also includes those who worked on the federal enclave. (*See* Doc. No. 1-1, ¶ 38) ("All persons who worked for Defendants . . ."). In other words, Beltran fails to identify a subclass of only those who worked exclusively outside the federal enclave. Accordingly, original jurisdiction extends to all subclasses because they include employees who worked at SONGS.

For the above reasons, the Court has original jurisdiction over Beltran's action.

**B. Motion to Dismiss**

Beltran argues that his state labor law claims are not barred because the California statutes, upon which the Complaint is based, preceded the date that SONGS became a federal enclave. (*See* Doc. No. 27.) The FAC alleges, in part, violations of California Labor Code sections 226, 226.7, and 512(a), as well as Business and Professions Code sections 17200, *et seq*. (*See* Doc. No. 22).

Beltran's argument lacks merit. Only state laws in effect at the time of cession or transfer of jurisdiction can continue in operation. *See James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940). Laws enacted by the state after transfer of jurisdiction do not apply in the federal enclave unless they come within a reservation of jurisdiction or are adopted by Congress. *See id.*; *Paul v. United States*, 371 U.S. 245, 268 (1963).

As described above, SONGS is located within the federal enclave of Camp Pendleton, which the United States acquired in 1942. California Labor Code section 226 was enacted in 1943, section 226.7 was adopted in 2000, section 512(a) was enacted in 1999, and the Business and Professions Code sections 1700, *et seq.* were enacted in 1977. (*See* Doc. No 24-1.) Accordingly, these sections were enacted or adopted after 1942 and thus do not apply to Beltran's claims. *See James Stewart & Co.*, 309 U.S. at 100. The Court therefore dismisses the claims asserted under California Labor Code sections 226, 226.7, and 512(a), as well as Business and Professions Code sections 17200, *et seq*.

### C. Arbitration Agreement

The Court now addresses whether the remaining claims are subject to arbitration. Beltran challenges the validity of the electronic signatures on the arbitration agreements ("Agreements") and, alternatively, argues that the Agreement is unenforceable. (*See* Doc. No. 27.) Further, Beltran contends Inter-Con waived its right to arbitrate by litigating the merits of the claims in court. (*See id.*)

8

1. Validity of Electronic Signatures

The Court addresses first the validity of the electronic signatures. Beltran does not contest the validity of the wet signatures for named-plaintiffs Guillermo Beltran (*see* Ex. C, Johnson Decl., Doc. No. 24-2), Luis Jimenez (*see* Ex. G, Johnson Decl., Doc. No. 24-2), Louis Dawkins (*see* Ex. E, Johnson Decl., Doc. No. 24-2), and Rudy Delao (*see* Ex. F, Johnson Decl., Doc. No. 24-2). Beltran does, however, contest the validity of the electronic signatures for named-plaintiffs Frank Anicoche, Jr., Paganini Louissaint, and Joshua Bolden (*see* Ex. J, Johnson Decl., Doc. No. 31-1.)

Beltran specifically challenges the authenticity of the exhibits attached to the declaration of Caitlin R. Johnson, counsel for Inter-Con. (*See* Johnson Decl., Doc. No. 31-1.) Beltran relies on *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836 (2014) to attack the authenticity of the exhibits. (*See* Doc. No. 27.) The *Ruiz* court held that the declaration accompanying the electronic signatures failed to explain how the declarant concluded that plaintiff had signed the document after plaintiff averred he did not recall electronically signing the document. 232 Cal. App. 4th at 844-45.

Beltran's arguments are unpersuasive. Whether a valid electronic signature exists, and thus whether a valid arbitration agreement exists, is a question of contract formation. *See Acevedo v. Russell Cellular, Inc.*, No. 20-01440, 2021 WL 973949, at *6 (E.D. Cal. March 16, 2021). Accordingly, federal courts apply state law in determining whether a valid arbitration agreement exists. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-

31 (2009).  In California, the Uniform Electronic Transaction Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form[,]" or "because an electronic record was used in its formation."  Cal. Civ. Code § 1633.7(a).  A defendant may meet its "initial burden to show an agreement to arbitrate" merely "by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature" to the motion to compel arbitration.  *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (Cal. Ct. App. 2016).  Once a plaintiff "challenge[s] the validity of that signature in his opposition," a defendant is "then required to establish by a preponderance of the evidence that the signature [is] authentic."  *Id.*

Beltran's challenge to the sufficiency of Johnson's declaration authenticating the electronic signature fails.  Johnson, who is familiar with Inter-Con's hiring practices and policies, has personal knowledge of Inter-Con's secure internet portal, hosted by Taleo and Paycom, where new applicants apply for positions.  (Johnson Decl., Doc. No. 31-1 at ¶ 4.)  According to Johnson, each job candidate creates "a username and password" to which "only the applicant has the password."  (*See id.* at ¶ 5.)  The declaration explains that applicants use their password-protected account to review and sign all initial hiring documents, including the Agreement, prior to employment.  (*See id.* at ¶¶ 6-7.)  The declaration further explains that for plaintiffs to complete the arbitration agreement, applicants were required to enter their full name, "username, password, and the date of signing, and then click a button that says 'e-Sign it!'" (*See id.*)  Johnson explains also that the system creates a unique "Esign ID" that the

system produces only if the signer's password verified his or her electronic signature. (*See id.* at ¶¶ 6-8.)  Unlike the unsuccessful declarant in *Ruiz*, Johnson describes in detail the steps of the initial hiring process, clarifying that the process could be completed only with signer's private password, and that plaintiffs completed the initial hiring process only by signing the arbitration agreement.  *See Smith v. Patina Restaurant Group, LLC*, No. 19-4441, 2019 WL 6434697, at *4 (C.D. Cal. Aug. 20, 2019).  Finally, Beltran does not argue plaintiffs did not sign the agreements and thus *Ruiz* is distinguishable.  Inter-Con therefore properly authenticated plaintiffs' electronic signatures on the Agreement.

 2. Class Action Waiver

 Beltran next argues that, even assuming the electronic signatures are authenticated, the Agreement is unenforceable because plaintiffs had no meaningful opportunity to opt out of the Agreement.  (*See* Doc. No. 27.)

 Beltran falls short of demonstrating the Agreement is unenforceable. Under the Federal Arbitration Act, an arbitration agreement is valid and enforceable unless grounds exist at law or in equity for revocation. 9 U.S.C. § 2.  Federal courts apply state law in determining whether a valid arbitration agreement exists.  *See Arthur Andersen LLP*, 556 U.S. at 630-31. "General contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements."  *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).  In California, a contract is unenforceable if it is both procedurally and substantively unconscionable.  *Armendariz v. Found. Health Psychcare*

*Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (citation omitted). Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power. *Id.* Substantive unconscionability is concerned with overly harsh or one-sided results. *Id*. "Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015) (citation omitted).

Even assuming for the purpose of this motion that Beltran had no meaningful opportunity to opt out, this would show only procedural unconscionability. As Beltran fails to make substantive unconscionability arguments, and both procedural and substantive unconscionability need to exist for an unconscionability defense, the Court finds the Agreement is enforceable.

3. <u>Arbitration Waiver</u>

Beltran asserts that Inter-Con waived its right to arbitrate by removing the action to federal court and by filing motions to dismiss Beltran's claims. (*See* Doc. No. 27.)

"Under federal law, waiver is the intentional relinquishment or abandonment of a known right. A party seeking to prove that the right to compel arbitration has been waived must carry the heavy burden of demonstrating: (1) knowledge of an existing right to compel arbitration; (2) intentional acts inconsistent with that existing right; and (3) prejudice to the

person opposing arbitration from such inconsistent acts." *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 940 (9th Cir. 2019).

Inter-Con knows of its right to compel arbitration, satisfying the first element. As to the second element, Inter-Con's acts are wholly consistent with an intent to seek arbitration. Inter-Con's pre-motion communications with Beltran demonstrate its intention to enforce the Agreement requiring arbitration. (*See* Exs. 1-1, 1-2, 1-3, Johnson Decl., Doc. No. 24-2). Further, Inter-Con's Motion to Dismiss contends "[Inter-Con] does not intend to, and expressly does not, waive its right to enforce the Agreements by first seeking a dismissal of the above-referenced claims pursuant to the federal enclave doctrine, which is the purpose of the concurrent Motion to Dismiss filed herein." (See Doc. No. 24 at 19 n.9). Finally, as there is no inconsistent conduct, there is no prejudice. *See Ironshore Specialty Insurance Company v. Kling Consulting Group, Inc.*, No. 19-05787, 2020 WL 3978080, at *5 (C.D. Cal. May 27, 2020) ("As the Court finds no inconsistent conduct, it thus follows there is no prejudice resulting from inconsistent conduct."). Inter-Con therefore has not waived arbitration.

The Court therefore finds the Agreement is enforceable and requires Beltran to arbitrate his remaining claims not dismissed above.

## IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Beltran's Motion to Remand and **GRANTS** Inter-Con's Motion to Dismiss with prejudice as to claims asserted under California Labor Code sections 226, 226.7, and

512(a), as well as Business and Professions Code sections 17200, et seq. All remaining claims also are dismissed against Inter-Con without prejudice and are compelled to arbitration.

**IT IS SO ORDERED.**

Dated: 9/13/21

Virginia A. Phillips
United States District Judge